

Gerald Markham Pro per
Attorney at Law
AK Bar # 72-10058
211 Mill Bay Rd.
Kodiak, AK 99615
PH  907-486-4194
FX 907-486-4602
Email: gmarkham@nwlink.com

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA TUCSON DIVISION

| | |
|---|---|
| Gerald Markham | ) |
|      Plaintiff, | ) |
| vs. | **CV 16-0134 TUC    JR** |
| Pima County Arizona, Pima County Sheriff's Department, Retired Sheriff Clarence Dupnik, Present Sherriff Chris Nancos, John Doe 1 thru 10, the training Officer or officers tasked with promulgating and training DUI policies and procedures of the Department including field sobriety tests, tests to determine blood alcohol concentration, and implied consent laws referred to in Pima County Sheriff's Department General Order 2009-003  7/3/09 pg. 9-5 ¶ IV(B); John Doe 10 thru 20, the DUI Unit Supervisor or Supervisor's  responsible for the Administration of the Pima County Department Phlebotomy Program, referred to in said order Id. ¶ IV (C)3,  Deputy Sheriff Alex Jansen #7332, Deputy Sheriff M. B. Dixon # 1199, Deputy Sheriff Sergeant E. C. Curtin # 1154 | ) CIVIL RIGHTS COMPLAINT<br><br>)    (42 USC § 1983)<br><br>)<br><br>) Case No _____<br><br>)<br><br>)<br><br>)<br><br>)<br><br>) |
|        Defendants | ) |

COMES NOW Plaintiff Gerald Markham pro per and complains and alleges:

1

## I. JURISDICTION AND VENUE

1. This is a Civil Action brought pursuant to 42 USC § 1988 seeking damages and injunctive against Defendants for committing acts, under color of law, which deprived Plaintiff of rights secured under the Constitution of the United States and its 4th, 5th, 6th, 8th and 14th Amendments and the laws of the United States prohibiting discrimination on the basis of age and disabling physical disabilities in violation of 42 USC ¶ 1983; for conspiring for the purpose of impeding and hindering the due course of justice with intent to deny equal protection of law, and

2. Jurisdiction is invoked on 28 USC §§ 1331 and 1343 and also predicated on diversity of Citizenship. Plaintiff is a citizen of Alaska domiciled in Kodiak and on information and belief all of the Defendants are citizens of Arizona domiciled in greater Tucson, The amount in controversy exceeds $75,000 exclusive of costs, interest and attorneys fees.

3. Venue is placed in this district as on information and belief, it is where all the Defendants reside and the place where all the events complained of occurred.

## II. PARTIES

1, Plaintiff at all times in question was an over age 65 senior citizen of Kodiak Alaska with disabilities, self employed as an attorney with several physical disabilities. He also owns a vacation rental home in Green Valley, Arizona that he stays at temporarily annually and while there often lawfully drinks alcohol and then lawfully drives an automobile after he does. He is therefore subject to repeated abuse at the hands of Defendants' unconstitutional and illegal activates in derogation of his civil rights described herein and in addition to damages for past actions is in need of injunctive relief for his future protection against similar future violations

2

2. Defendants are as follows"

a) Pima County Arizona at all times alleged herein was and is a municipal county lawfully organized under the State of Arizona and was acting at all times pursuant to its law, regulations, procedures, rules, customs and practices at all times alleged herein and since.

b) Pima County Sherriff's Department at all times alleged herein was and is a lawfully organized Department with Pima County Arizona and similarly so acting.

c) Sheriff Clarence Dupnik was the head law enforcement officer of Pima County and was responsible for promulgating the Sherriff's Department Rules and practices described herein the enforcement of which denied or otherwise violated Plaintiff's civil rights as well as ultimately for the selection, training, supervision(or the lack thereof) and the procedures his Deputies were to follow in enforcing the above until he retired in 2015.

d) Sherriff Chris Nancos is the new Sheriff head law enforcement officer of Pima County and is responsible for enforcing the Sherriff's Department Rules and practices described herein which denied or otherwise violated Plaintiff's civil rights in the past and threaten to in the future as well as ultimately for the selection, training, supervision(or the lack thereof) and the procedures his Deputies are to follow in enforcing the above

e) John Doe 1 thru 10, and the training Officers tasked with promulgating and training DUI policies and procedures of the Department including field sobriety tests, tests to determine blood alcohol concentration, and implied consent laws referred to in Pima County Sheriff's Department General Order 2009-003  7/3/09 pg. 9-5 ¶ IV(B)

f) John Doe10 thru 20, are the DUI Unit Supervisor's responsible for the Administration of the Pima County Sherriff's Department Phlebotomy Program, referred to in order Id. ¶ IV(C)3.

3

g) Alex Jansen #7332 is the Pima County Sherriff's Department Deputy that illegally arrested Plaintiff in this matter and thereafter conspired with Deputy Dixon to deprived Plaintiff of his constitutional rights to due process and counsel, and illegally search, assault, seriously hurt and occasion him risk, emotional distress, cruel and unusual punishment and illegal restraint.

h) M. B. Dixon # 1199, is an Deputy with the Pima County Sherriff's Department Deputy and alleged phlebotomist that thereafter conspired with Deputy Jansen to deprived Plaintiff of his constitutional rights to due process and counsel, and illegally search, assault, seriously hurt and occasion him risk, emotional distress, cruel and unusual punishment and illegal restraint.

i) Sergeant E. C. Curtin # 1154 is Deputy with the Pima County Sherriff's Department Deputy and alleged phlebotomist that thereafter conspired with Deputy Dixon to deprived Plaintiff of his constitutional rights to due process and counsel, and illegally search, assault, seriously hurt and occasion him risk, emotional distress, cruel and unusual punishment and illegal restraint.

## III. CAUSES OF ACTION

### A.  DISCRIMINATORY PRACTICES AND ILLEGAL ARREST DEPUTY JANSEN

1. On March 8, 2014 at about 11:40 PM in the community of Green Valley, Arizona Plaintiff was peacefully and lawfully driving his automobile to the vacation home that he owns there when Pima County Sherriff Deputy Alex Jansen #7332 activated the red lights of his marked Pima County Sherriff vehicle indicating that Plaintiff should pull over and stop his vehicle which Plaintiff promptly did as soon as a safe opportunity presented itself.

2. Whereupon Deputy Pima County Sherriff Deputy Alex Jansen #7332 in full uniform approached Plaintiff's vehicle, asked to see his drivers license, registration and proof of insurance and proceed to engage Plaintiff and his passenger in conversation. As he did so one

4

or more police vehicles bearing two or more Pima County Sherriff Deputy's arrived.

3. At a certain point in the conversation, Pima County Sherriff Deputy Jansen asked Plaintiff if he'd been drinking alcohol that evening to which Plaintiff admitted that he had but that he had not consumed an amount that would influence his ability to drive, nevertheless it became clear to Plaintiff that Deputy Jansen had already formed the opinion that he had. Nevertheless because he had not been, Plaintiff being familiar from his training and experience as a retired Alaska prosecutor with the Horizontal Gaze Nystagmus (HGN) and other components of a standard field sobriety test and confident administer by a competent unbiased police officer would establish that, he agreed to perform said test advising Deputy Jansen beforehand that certain of those tests were inappropriate for an over age 65 individual with his disabilities and specifically asking for the Horizontal Gaze Nystagmus (herein HGN) test.

4. However Deputy Jansen was not properly trained to perform such a standard field sobriety test on a know over age 65 year old individual and specifically was not trained in the (HGN). Nor apparently were any of the other officer's present nor was he willing to call for another officer to come to the scene who was. As a result when he perceived Plaintiff to have failed the other (inappropriate for his age or disabilities ) field sobriety tests and when Plaintiff refused to submit to his portable breath test (but expressly asked to be given a  "breathalyzer" or intoximeter test was told the Pima County Sherriff's office did not have such equipment and he placed Plaintiff under arrest, hand cuffed him and directed he enter the rear seat of his police vehicle. Said arrest by Deputy Jansen was there for without probable cause and as a result of discriminatory practices in violations of Federal Law and in violation of Plaintiff's civil rights.

5

## B. UNCONSTITUTIONAL DENIAL OF COUNSEL AND UNCONSTITUTIONAL SEARCH DEPUTIES JANSEN, AND DIXON

1. After 12:01 AM on March 9, 2015 following his arrest Plaintiff invoked his right to speak to legal counsel but instead Deputy Jansen insisted he remain handcuffed in the back seat of his vehicle at the scene while Plaintiff decided without the assistance of counsel whether he would agree to his blood draw to be performed by an officer the Deputy Jansen claimed was qualified to do that at the scene of Plaintiff's arrest despite Plaintiff making Deputy Jansen aware that he had a serious heart condition and whether or not related thereto had always been difficult to draw blood from.  Plaintiff readily agreed to a blood draw on the condition that it be done at a nearby hospital or other location other than the scene by any other person qualified to do so or even the supposedly qualified officer at the scene upon satisfying himself that the proposed officer was in fact qualified.  After some substantial period of time Deputy Dixon arrived at the scene but when Plaintiff asked to see his credentials he was told "my badge is my credential" nor would he discuss his qualifications to draw blood at the scene or anywhere. Accordingly Plaintiff aware that as time passed the blood evidence of his intoxication at the time he was driving had been altered the delays Deputy Jansen occasioned bringing the unqualified Dixon to the scene by then persisted in his request to be immediately taken to a qualified person to draw his blood, but both Deputies Jansen and Dixon refused.  Plaintiff was instead taken to the Green Valley Sherriff's station and held in a room without a telephone to call counsel for a substantial period of time while these Deputies said they were going to get a warrant to allow Deputy Dixon to draw Plaintiff's blood despite his objections to his qualifications. They returned with a document that was signed by one of the officer purportedly with the authority

6

of a magistrate but no proof of the authority to do so was shown Plaintiff accordingly he persisted in his request to be taken to a qualified person to take his blood.

2. In view of his persistence Plaintiff was told he must either agree to Deputy Dixon drawing his blood or he'd be taken to the Pima County jail. Plaintiff persisted in agreeing that he wanted his blood drawn as soon as possible but that he would not agree to do so in the absence of any proof or explanation that Deputy Dixon was qualified to do so in view of his condition.

3. Plaintiff was thereafter taken by Deputy Jansen to the Pima County Jail in Tucson while the validity of any blood evidence relative to his ability to drive continued to be altered which by the Deputies decisions resulting in a further denial of Plaintiff's constitutional rights.

### C. UNCONSTITUTIONAL DENIAL OF COUNSEL, UNCONSTITUTIONAL SEARCH AND SEIZURE, INFLICTION OF CRUEL AND UNUSUAL PUNISHMENT, AND UNCONSTITUTIONAL DETENTION BY DEPUTIES JANSEN, DIXON AND DEPUTY SERGEANT E. C. CURTIN

1. Upon arriving at the jail, Plaintiff was met in the jail parking lot by Deputy Dixon and several other officers including one operating a video camera. Upon seeing that camera and an opportunity to preserve evidence on it Plaintiff reasonably asked to be allow to walk unassisted and perform other physical acts that would demonstrate his lack of intoxication but Deputy Dixon refused restraining Plaintiff by the arm and shoving him toward the jail. Once inside he was un-handcuffed, told to sit in a restraint chair and told if he did not agree to a blood draw by Deputy Dixon he would be restrained and blood would be forcibly drawn from him. Plaintiff accordingly agreed to cooperate and the video (a copy of which he has) shows that he did so.

2. But despite his cooperation, Deputy Dixon was unable to draw blood from Plaintiff. He then brought in Deputy Sergeant E. C. Curtin who also had no credentials and was unwilling to

7

describe his qualifications who likewise failed on two more attempts to draw Plaintiff's blood.

3. Then over Plaintiff's protest Deputy Dixon tried yet one more unsuccessful attempt.

4. At this point Plaintiff having cooperated in all five attempts at great pain to himself became irate and demanded to speak to counsel or the magistrate who had allegedly ordered his blood drawn by Pima County Sherriff Officers at which point Plaintiff was told he would be taken to a nearly hospital to do it. Plaintiff readily agreed and after the passage of more time that was done by a qualified nurse on her first attempt.

5. Nevertheless Plaintiff told that the above three officers determined by that due to his lack of consent he would be incarcerated in the Pima County Jail until he could arrange to be bailed or released. Only then after being booked and his credit cards being taken was he allowed a phone call which was severely limited in time given he didn't have a credit card to bill it to. And barely allowed him time to make a call to his passenger telling her where he was on arraigned for her to bail Plaintiff out in the morning. As a result Plaintiff had to spent the night and most of the next day in the Pima County Jail holding area until he was bailed and released.

### D. REMAINING NAMED DEFENDANTS ARE RESPONSIBLE TO THE ABOVE CONDUCT OF DEPUTIES JANSEN, DIXON AND CURTIN FOR THEIR PART IN IMPLEMENTING RULES AND PRACTICES THAT PROSCRIBED THEIR ABOVE ACTIONS IN THIS SITUATION AND IN FAILING TO PASS OTHERS TO PREVENT IT AND IN FAILING TO SUPERVISE AND TO IMPLEMENT TRAINING AND PERIODIC TESTING OF THE THESE AND OTHER OFFICERS.

1. Plaintiff re-alleges the facts in ¶ III A-C above.

2. Remaining named defendants are responsible to the above conduct of deputies Jansen, Dixon and Curtin for their part in implementing rules and practices that proscribed their above actions in this situation and in failing to pass others to prevent it and in failing to supervise and

8

to implement training and periodic testing of the these and other officers.

## IV. DAMAGES

1. As a result of Defendants above described conduct Plaintiff suffered embarrassment, the restraint of his freedom, the denial of his constructional and federal statutory rights, severe pain, sever emotional distress, lack of sleep, deprivation of his need medications and resulting risk to his life, lost income, and the loss of the enjoyment of life some of which is permanent for which he is entitled to damages and punitive damages exclusive of costs and attorney fees in excess of $ 75,000.

2. And Plaintiff suffers risk of exposure to similar conduct in the future justifying a permanent injunction.

## V. PRAYER

ACCORDINGLY PLAINTIFF PRAYS for and a judgment of special, general and punitive damages in excess of $75,000 against all of the above Defendants jointly and severally together with an award of costs, interests and attorneys fees as well as a permanent injunction and  such other relief as may be due him at law or in equity.

RESPECTFULLY SUBMITTED this March 5, 2016 at Marysville, WA.

Gerald W. Markham Attorney at Law pro per
AK Bar No 72-10058