UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Gerald Markham,<br><br>     Plaintiff,<br><br>vs.<br><br>Pima County, et al.,<br><br>     Defendants. | CV 16-134-TUC-JAS (JR)<br><br>**REPORT AND RECOMMENDATION** |

On July 8, 2016, Defendants Pima County, former Sheriff Dupnik, Sheriff Nanos, and Pima County Sheriff's Department filed a Motion to Dismiss, and Defendant Deputies Jansen, Dixon, and Curtin filed a Partial Motion to Dismiss. (Doc. 23).[1]  Plaintiff filed a Response on August 23, 2016 (Doc. 34) and Defendants filed a Reply on August 26, 2016  (Doc. 37).  For the reasons stated herein, the Court

---

[1] "Doc." refers to the docket number in CV 16-134-TUC-JAS (JR).

recommends that the District Court grant in part and deny in part Defendants' Motion to Dismiss.

## I. Factual Background

On March 8, 2014, at 11:40 p.m., Plaintiff, a 65 year-old disabled senior citizen, was driving his car in the community of Green Valley, Arizona when he was pulled over by Pima County Sheriff Deputy Jansen. Doc. 1, p. 2, 4. The deputy asked to see Plaintiff's drivers' license, registration and proof of insurance. *Id.*, p. 4. He also asked Plaintiff if he had been drinking and Plaintiff admitted he had, but that he had not consumed an amount that would influence his ability to drive. *Id.*, p. 5. Plaintiff agreed to perform field sobriety tests but refused to submit to a portable breath test. *Id*. Deputy Jansen placed him under arrest, handcuffed him and directed him to enter the rear seat of the police vehicle. *Id.*

Plaintiff invoked his right to counsel but agreed without the assistance of counsel to have his blood drawn on the condition that the procedure be performed by a qualified person at a nearby hospital. *Id.*, p. 6. Plaintiff advised the deputy that he had a serious heart condition and that it had always been difficult for his blood to be drawn. *Id*. In the meantime, Deputy Dixon arrived. *Id.* Plaintiff asked to see his credentials but the deputy refused to discuss his qualifications to draw blood. *Id.* Plaintiff again asked that he be taken to a qualified person to draw his blood but both Deputies Jansen and Dixon refused. *Id.*

Plaintiff was taken to the Green Valley Sherriff's station and held in a room without a telephone to call counsel for a substantial period of time while the deputies

1 obtained a warrant to draw his blood. *Id.* The deputies later returned with a
2 document purportedly signed by a judge. *Id.,* p. 7. The deputies refused to provide
3 proof of the document and Plaintiff persisted in his request to be taken to a qualified
4 person to take his blood. *Id.* Plaintiff was told that he must either agree to let Deputy
5 Dixon draw his blood or he would be taken to the Pima County jail. *Id.* Because of
6 his health condition and because Deputy Dixon could not prove he was qualified,
7 Plaintiff refused to submit to a blood test. *Id.*

8 Deputy Jansen took Plaintiff to the Pima County jail in Tucson where he was
9 met in the parking lot by Deputy Dixon and several other officers, one of whom had
10 a video camera. *Id.* Plaintiff asked that he be allowed to perform physical acts in
11 front of the camera to prove that he was not intoxicated but Deputy Dixon refused
12 and restrained Plaintiff by the arm and shoved him toward the jail. *Id.*

13 Once inside the jail, Plaintiff was un-handcuffed and told to sit in a restraint
14 chair. *Id.* He was warned that if he did not cooperate and let Deputy Dixon take his
15 blood, he would be restrained and blood would be forcibly drawn from him. *Id.*
16 Plaintiff cooperated but Deputy Dixon was not able to draw blood. *Id.* Deputy
17 Curtain joined and made two more attempts to draw blood. *Id.,* p. 7-8. Over
18 Plaintiff's protest, Deputy Dixon made one more attempt. *Id.,* p. 8. After five
19 unsuccessful attempts, Plaintiff became irate and demanded to speak to counsel or
20 the judge who signed the warrant. *Id.* Instead, Plaintiff was taken to the hospital
21 where a qualified nurse took his blood on her first attempt. *Id.*

22

Plaintiff was then taken back to the jail and booked and was finally allowed to use the phone. *Id.* Plaintiff spent the night and most of the next day in jail until he was released on bail. *Id.*

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 and § 1988. *Id.*, p. 2. He alleges that his Fourth, Fifth, Sixth, Eighth and Fourteenth Amendment rights were violated. *Id.* Plaintiff further claims discrimination based on disabling physical disabilities. *Id.* He sues the three deputy sheriffs involved in his arrest (Defendants Jansen, Dixon and Curtin) as well as Pima County, the Pima County Sherriff's Office (PCSD), retired Sheriff Dupnik, and current Sheriff Nanos. *Id.*, pgs. 2-4.

Defendants Jansen, Dixon and Curtin move to dismiss Plaintiff's Fifth, Sixth, Eighth and Fourteenth Amendment claims as well as any disability claims. They do not move for dismissal of Plaintiff's Fourth Amendment claims. Defendants Pima County, the PCSD, retired Sheriff Dupnik, and current Sheriff Nanos move for the dismissal of the entire complaint.

## II. Legal Discussion

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 , 555 (2007). A document filed pro se is "to be liberally construed" and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards

than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (internal quotation marks omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *North Star Int'l. v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). Dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Twombly*, 550 U.S. at 555. A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is not just possible, but also plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). A court, however, need not accept a plaintiff's legal conclusions as true. *Iqbal*, 556 U.S. at 678. Nor must a court presume the veracity of the legal conclusions that are couched as factual allegations. *Twombly*, 550 U.S. at 555.

### A. Defendants Jansen, Dixon and Curtin

#### 1. Right to Counsel Claims

Plaintiff alleges a violation of his Fifth Amendment right to counsel during interrogation as well as a violation of his Sixth Amendment right to the assistance of counsel. Specifically, Plaintiff alleges that prior to consenting to his blood draw and

5

during the various attempts to take his blood, he asked to speak to an attorney but was denied.

Before a person is questioned by law enforcement officers after being taken into custody or otherwise deprived of his freedom of action in any significant way, he must first be warned that he has the right to remain silent, that any statements he does make may be used against him, and that he has a right to the presence of an attorney, either retained or appointed. *Miranda v. Arizona*, 384 U.S. 436, 467-68 (1966). Plaintiff does not allege that he was "interrogated" and so *Miranda* warnings were not required. Additionally, in the context of an arrest for driving while intoxicated, a police inquiry of whether a suspect will take a blood-alcohol test is not an "interrogation" within the meaning of *Miranda*. *South Dakota v. Neville*, 459 U.S. 553, 571, n. 15 (1983). Plaintiff has failed to allege a Fifth Amendment claim. The Court will recommend that the claim be dismissed with leave to refile.

The Sixth Amendment provides that in all criminal prosecutions, an accused shall enjoy the right to have the assistance of counsel for his defense. This right attaches only upon "the initiation of adversary judicial criminal proceedings" against the defendant. *United States v. Gouveia*, 467 U.S. 180, 189 (1984). The right to counsel does not attach until "at or after the initiation of adversary judicial criminal proceedings--whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689, 92 S.Ct. 1877, 1882, 32 L.Ed.2d 411 (1972). Without the right to have counsel present, an accused does not have a Sixth Amendment right to place a phone call, be it to an attorney or

1 family members. *State Bank of St. Charles v. Camic*, 712 F.2d 1147, 1145 n. 2. (7th

2 Cir. 1983); *see also Schmerber v. California*, 384 U.S. 757, 760–66 (1966) (holding

3 that there is no Sixth Amendment right to counsel when an accused is asked to

4 submit to a chemical test because the person is "not entitled to assert the privilege

5 [against self-incrimination]" by refusing to submit to a chemical test).  Plaintiff has

6 failed to allege a Sixth Amendment claim. The Court will recommend that the claim

7 be dismissed without leave to refile.

8        **2.**       **Eighth and Fourteenth Amendment Claims**

9     Inmates who sue prison officials for injuries suffered while in custody may do

10 so under the Eighth Amendment's Cruel and Unusual Punishment Clause or, if not

11 yet convicted, under the Fourteenth Amendment's Due Process Clause. *Castro v.*

12 *County of Los Angeles*, 2016 WL 4268955,*2 (9th Cir. 2016).  Under both clauses, a

13 plaintiff must show that the defendant acted with "deliberate indifference." *Id.*  Here,

14 since Plaintiff was a pre-trial detainee his claim arises not under the Eighth

15 Amendment but under the Fourteenth Amendment.

16     The elements of a pretrial detainee's Fourteenth Amendment failure-to-protect

17 claim against an individual officer are: (1) The defendant made an intentional

18 decision with respect to the conditions under which the plaintiff was confined; (2)

19 those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the

20 defendant did not take reasonable available measures to abate that risk, even though a

21 reasonable officer in the circumstances would have appreciated the high degree of

22

1 risk involved—making the consequences of the defendant's conduct obvious; and (4)
2 by not taking such measures, the defendant caused the plaintiff's injuries. *Id.* at * 7.

3       Plaintiff presented sufficient evidence to support a Fourteenth Amendment
4 claim. He alleges that he advised the deputies that he had a medical condition that
5 made it difficult for his blood to be drawn. Instead of taking Plaintiff to the hospital
6 or some medical facility where trained medical staff could attend to him, the deputies
7 made five unsuccessful attempts to draw his blood. Plaintiff alleges that he suffered
8 severe pain. The Court will recommend that Plaintiff's Eighth Amendment claim be
9 dismissed with prejudice and that his Fourteenth Amendment claim go forward.

10       **3.**     **Disability Claims**

11       The Americans with Disabilities Act (ADA) defines a "disability" as "(A) a
12 physical or mental impairment that substantially limits one or more of the major life
13 activities of such individual; (B) a record of such an impairment; or (C) being
14 regarded as having such an impairment." 42 U.S.C. § 12102(2). A "qualified
15 individual with a disability" is someone who "with or without reasonable
16 modifications to rules, policies, or practices, the removal of architectural,
17 communication, or transportation barriers, or the provision of auxiliary aids and
18 services, meets the essential eligibility requirements for the receipt of services or the
19 participation in programs or activities provided by a public entity." 42 U.S.C. §
20 12131(2). The term "public entity" is defined as "any department, agency, special
21 purpose district, or other instrumentality of a State or States or local government." 42
22 U.S.C. § 12131(1).

The ADA consists of three titles that address discrimination against the disabled in different contexts. Title I prohibits employment discrimination, 42 U.S.C. § 12112; Title II prohibits discrimination in the services of public entities, 42 U.S.C. § 12132; and Title III prohibits discrimination by public accommodations involved in interstate commerce such as hotels, restaurants, and privately operated transportation services, 42 U.S.C. §§ 12182, 12184.

The title most applicable to Plaintiff's case is Title II.  Courts have recognized two genres of Title II ADA claims related to arrests: a wrongful-arrest theory and a reasonable-accommodation-during-arrest theory. *Sheehan v. City & Cty. Of San Francisco*, 743 F.3d 1211, 1232 (9th Cir. 2014), *rev'd in part, cert. dismissed in part sub nom.*, *City & Cty. of San Francisco, Cal. v. Sheehan*, 135 S.Ct. 1765 (2015). Under the first theory, police are alleged to have wrongly arrested someone with a disability because they misperceived the effects of that disability as criminal activity. *See Lewis v. Truitt*, 960 F.Supp. 175, 176–77 (S.D.Ind. 1997).  Under the second theory, while police properly investigated and arrested a person with a disability for a crime unrelated to that disability, they failed to reasonably accommodate the person's disability in the course of investigation or arrest, causing the person to suffer greater injury or indignity in that process than other arrestees. *See Gorman v. Bartch*, 152 F.3d 907, 912–13 (8th Cir. 1998).

Plaintiff's claim falls under the second theory.  He argues that he advised one of the deputies that he had a serious heart condition and that it had always been difficult for his blood to be drawn.  Rather than accommodating his disability by

9

having a medical professional draw his blood, Defendants made five unsuccessful attempts to draw his blood. Assuming the Defendants fall within the statutory definition of a "public entity" and assuming that the Plaintiff can prove that he is disabled, his claim falls within the framework of Title II of the ADA. The Court will recommend that his ADA claim go forward.[2]

**B.    Defendant PCSD**

State law determines whether a government entity has the capacity to be sued. Fed.R.Civ.P. 17(b)(3). In Arizona, a government entity may be sued only if the legislature has given that entity the power to be sued. *See Schwartz v. Superior Court*, 186 Ariz. 617, 619 (Ct.App.1996). "Governmental entities have no inherent power and possess only those powers and duties delegated to them by their enabling statutes." *Braillard v. Maricopa Co.*, 224 Ariz. 481, 487 (2010). In *Braillard*, the court found that although an Arizona statute provided that counties have the power to sue and be sued through their board of supervisors, no Arizona statute conferred that power on the Maricopa County Sheriff's Office as a separate legal entity. *Braillard*, 224 Ariz. at 487. Accordingly, a number of Arizona courts have found that sheriff's offices and police departments are non-jural entities and have dismissed them when named as a party in Arizona District Court. *See Wilson v. Maricopa Cnty.,* 2005 WL 3054051, at *2 (D.Ariz. 2005); *Gotbaum v. City of Phoenix*, 617 F.Supp.2d 878, 886

---

[2] Plaintiff makes a passing reference to having been discriminated against because of his age and having been denied the equal protection of the law. His Complaint however, lacks any specificity sufficient to even address those references.

10

1  (D.Ariz. 2008); *Ekweani v. Maricopa Cnty. Sheriff's Office*, 2009 WL 976520, at *2
2  (D.Ariz. 2009); Payne v. Arpaio, 2009 WL 3756679, *3, 8 (D.Ariz. 2009); *Duqmaq*
3  *v. Pima Cnty. Sheriff's Dep't*, 2012 WL 1605888 (D.Ariz. 2012); *Tarantino v.*
4  *Dupnik*, 2012 WL 1718893 (D.Ariz. 2012); and *Phillips v. Salt River Police Dep't*,
5  2013 WL 1797340 (D.Ariz. 2013).

6  Based on the lack of an Arizona statute granting the PCSD the capacity to sue
7  and be sued as well as prior court decisions dismissing such departments as non-jural
8  entities, the Court will recommend that Defendant PCSD be dismissed with
9  prejudice.

10  **C.   Defendants Dupnik and Nanos (in their individual capacities)**

11  Under Section 1983, supervisory officials are not liable for actions of
12  subordinates on a theory of vicarious liability. *Pembaur v. City of Cincinnati*, 475
13  U.S. 469, 479 (1986). A supervisor may be liable if there exists either (1) his
14  personal involvement in the constitutional deprivation, or (2) a sufficient causal
15  connection between the supervisor's wrongful conduct and the constitutional
16  violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989). Supervisory liability
17  can exist however even without overt personal participation in the offensive act if the
18  supervisory official implemented a policy so deficient that the policy "itself is a
19  repudiation of constitutional rights" and is "the moving force of the constitutional
20  violation." *Id.* (citations omitted).

21  Here Plaintiff does not allege that either the former Pima County Sheriff
22  (Defendant Dupnik) or the acting Sheriff (Defendant Nanos) were personally

11

involved in the incident. Nor does he allege that either Defendant personally implemented the particular policy that resulted in Plaintiff's alleged constitutional violation. The Court will recommend that Plaintiff's claims against Defendants Dupnik and Nanos in their individual capacity be dismissed with leave to amend.

### D. Defendants Dupnik and Nanos (in their official capacity)

Rule 25(d) of the Federal Rules of Civil Procedure provides: "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution." Accordingly, the Court will recommend that Defendant Dupnik in his official capacity be dismissed without leave to amend.

The Court will further recommend that Plaintiff's claim against Defendant Nanos in his official capacity be dismissed without leave to amend. *See Atencio v. Arpaio*, 161 F.Supp.3d 789, 806 (D.Ariz. 2015) (stating that an action against a municipal officer in his official capacity is simply another way of pleading an action against the municipality and there is no point to bringing official-capacity actions against local government officials because, under *Monell*, local government units can be sued directly.)

. . . .

. . . .

### E. Defendant Pima County

In *Monell v. Department of Social Services*, 436 U.S. 658 (1978), the Supreme Court held that a municipality may not be held liable for a § 1983 violation under a theory of respondeat superior for the actions of its subordinates. In order to establish municipal liability, a plaintiff must show that a "policy or custom" led to the plaintiff's injury. *Id.* at 694.  Liability attaches only where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell*, 436 U.S. at 694. A municipality's failure-to-train an employee who has caused a constitutional violation can be the basis for § 1983 liability where the failure-to-train amounts to deliberate indifference to the rights of persons with whom the employee comes into contact. *City of Canton v. Harris,* 489 U.S. 378, 392 (1989).

Here, Plaintiff references the PCSD's Phlebotomy Program as it relates to "field sobriety tests, tests to determine blood alcohol concentration, and implied consent laws." (Doc. 1, p. 3).  His Complaint does not detail any specific provisions of the program, but attached to his Opposition to Motion to Dismiss are excerpts from the PCSD's Manual with hand written notations on some of the paragraphs. Docs. 34-1 to 34-4.[3]  Plaintiff has adequately referenced the "policy" required by

---

[3] The Court will consider the document in ruling on this Motion to Dismiss based on the rule which allows that "[s]tatements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion." *See*

*Monell*. But under *Monell*, Plaintiff must also allege that the DUI policy violated his constitutional rights. There is nothing inherently unconstitutional alleged in Plaintiff's Complaint and the Complaint cannot be read as to give rise to such an inference.

Regarding his failure-to-train claim, Plaintiff only generally alleges that "the remaining named defendants are responsible to the above conduct of deputies Jansen, Dixon and Curtain for their part in implementing rules and practices that proscribed their above actions in this situation and in failing to pass others to prevent it and in failing to supervise and to implement training and periodic testing of these and other officers." Doc. 1, p. 8. Plaintiff does not allege a cognizable failure-to-train claim. *See Iqbal*, 556 U.S. at 678 (A court, need not accept a plaintiff's legal conclusions as true.)

The Court will recommend that Plaintiff's claim against Defendant Pima County be dismissed with leave to amend.

**III.    Leave to Amend**

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "shall be freely granted when justice so requires," bearing in mind "the

---

Fed.R.Civ.P. 10(c); *see also Cortec Industries Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2nd Cir. 1991) ("Relying on Rule 10(c), we have held that the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference.") (citations omitted). The Court will not however consider any of the other attachments, Docs. 34-5 through 34-18.

underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). Generally, leave to amend shall be denied only if allowing amendment would unduly prejudice the opposing party, cause undue delay, or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

With these low standards in mind, the Court recommends that the District Court permit the Plaintiff, if he wishes to do so, to file within 30 days an amended complaint (on certain claims) to cure the deficiencies outlined above.  An amended complaint should contain short, plain statements advising the Court of the following: (1) the constitutional right violated; (2) the name of the defendant who violated the right; (3) exactly what that defendant did or failed to do; (4) how the action or inaction of that defendant is connected to the violation of Plaintiff's constitutional rights; and (5) what specific injury the Plaintiff suffered because of that defendant's conduct. Plaintiff must repeat this process for each person named as a defendant.

If Plaintiff fails to affirmatively link the conduct of each named Defendant with the specific injury suffered by the Plaintiff, this Court will recommend that the District Court dismiss the allegations for failure to state a claim.

**IV. Recommendation**

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review, **grant in part and deny in part** Defendants' Motion to Dismiss (Doc. 23) as follows:

Deny Defendants' Motion to Dismiss:

-Fourteenth Amendment claim against Defendants Jansen, Dixon and Curtin

-ADA claim against Defendants Jansen, Dixon and Curtin;

Grant Defendants' Motion to Dismiss *without* leave to refile:

-Sixth Amendment claim against Defendants Jansen, Dixon and Curtin

-Eighth Amendment claim against Defendants Jansen, Dixon and Curtin

-all claims against Defendant PCSD

-all claims against Defendants Dupnik and Nanos in their official capacity

Grant Defendants' Motion to Dismiss with leave to amend:

-Fifth Amendment claim against Defendants Jansen, Dixon and Curtin

-all claims against Defendants Dupnik and Nanos in their individual capacity

-all claims against Defendant Pima County

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. No replies shall be filed without leave of the District Court. If any objections are filed, this action should be

designated case number: **CV 16-134-TUC-JAS**.  Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).

Dated this 28th day of September, 2016.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge