**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Gerald Markham,<br><br>        Plaintiff,<br><br>vs.<br><br>Pima County, et al.,<br><br>        Defendants. | CV 16-134-TUC-JAS (JR)<br><br>**REPORT AND RECOMMENDATION** |

Pending before the Court is Defendants' Motion to Dismiss First Amended Complaint. (Doc. 55).[1] For the reasons stated herein, the Magistrate Judge recommends that the District Court grant the Motion in part and deny it in part.

**I.    Procedural Background**

This case was originally filed on March 7, 2016. (Doc. 1). Following briefing on Defendants' Motion to Dismiss for Failure to State a Claim (Docs. 23, 34, 37), this Court issued a Report and Recommendation (Doc. 38) recommending that Defendants' Motion be granted in part and denied in part as follows:

---

[1] "Doc" refers to the docket number in CV 16-134-TUC-JAS (JR).

1

1 | Deny Defendants' Motion to Dismiss:

2 |     -Fourteenth Amendment claim against Defendants Jansen, Dixon and Curtin;

3 |     -ADA claim against Defendants Jansen, Dixon and Curtin;

4 | Grant Defendants' Motion to Dismiss *without* leave to refile:

5 |     -Sixth Amendment claim against Defendants Jansen, Dixon and Curtin

6 |     -Eighth Amendment claim against Defendants Jansen, Dixon and Curtin

7 |     -all claims against Defendant PCSD

8 |     -all claims against Defendants Dupnik and Nanos in their official capacity

9 | Grant Defendants' Motion to Dismiss with leave to amend:

10 |     -Fifth Amendment claim against Defendants Jansen, Dixon and Curtin

11 |     -all claims against Defendants Dupnik and Nanos in their individual capacity

12 |     -all claims against Defendant Pima County

Doc. 38 at 16:1-12.

    The Court's Report and Recommendation was adopted by the District Court on December 1, 2016. (Doc. 45). On January 30, 2017, Plaintiff filed his Amended Civil Rights Complaint (Doc. 47).

    Plaintiff's new complaint alleges an official-capacity *Monell* claim against the current Pima County Sheriff Napier ("Napier") for injunctive relief (Doc. 47 at 25-27)[2]; individual-capacity claims under the Fourth and Fourteenth Amendment (based

---

[2] Plaintiff mistakenly names Mike Christy as the current Pima County Sheriff. The Court will refer to the actual Sheriff who is Mark Napier. (Docs. 47 at 25; 55 at fn. 3.)

2

on policies, practices and orders) against retired Pima County Sherriff Dupnik ("Dupnik") and former Pima County Sheriff Nanos ("Nanos") (*Id.* at 19-24); an official capacity/*Monell* ADA claim against Pima County based on the actions of Dupnik, Nanos, Pima County Deputy Sheriffs Jansen ("Jansen") and Dixon ("Dixon") and Pima County Sheriff Sergeant Curtin ("Curtin"). (*Id.* at 28-33); and Fourth and Fourteenth Amendment claims (excessive force and unlawful incarceration) against Jansen, Dixon and Curtin (*Id.* at 14-19).

On March 8, 2017, Defendants Pima County Sheriff's Department ("PCSD"), Dupnik, Nanos, Napier, Jansen, Dixon, and Curtin filed a Motion to Dismiss the entirety of Plaintiff's First Amended Complaint. (Doc. 55 at 18).[3] Defendant Pima County filed a partial motion to dismiss the ADA official capacity/*Monell* claim against Pima County. (*Id.*) Plaintiff filed a Response on June 19, 2017 (Doc. 72) and Defendants filed a Reply on June 13, 2017 (Doc. 69).

**II.    Legal Discussion**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 , 555 (2007). A document filed pro se is "to be liberally construed" and "a

---

[3] Because the Court previously dismissed the PCSD *without* leave to refile (Docs. 38 at 16:4-7; 45), the Court will not address Defendants' motion as it pertains to the PCSD.

3

pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (internal quotation marks omitted).

Rule 12(b)(6) of the Federal Rules of Civil Procedure requires that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *North Star Int'l. v. Ariz. Corp. Comm'n.*, 720 F.2d 578, 581 (9th Cir. 1983). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir.1994). Dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *Twombly*, 550 U.S. at 555. In considering whether the complaint is sufficient to state a claim, a court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

**A. Official-Capacity/Monell Claim against Napier (Doc. 47 at 25-27)**

In accordance with Rule 25(d) of the Federal Rules of Civil Procedure, Plaintiff substitutes current Sheriff Napier for former Sheriff Dupnik. For the reasons stated in this Court's Report and Recommendation (Doc. 38 at 12, 16), the Court will recommend that this claim be dismissed without leave to amend.[4]

---

[4] To the extent that Plaintiff's Amended Complaint alleges an individual-capacity claim against Napier, the Court will similarly recommend that the claim be dismissed for the reasons set forth herein in Section B.

4

**B. Individual-Capacity Fourth and Fourteenth Amendment Claims (based on policies, practices and orders) against Dupnik and Nanos (Doc. 47 at 19-24)**

Plaintiff was given leave to refile his complaint against Dupnik and Nanos in their individual capacity. (Doc. 38 at 16:9-11.) He did so by alleging that Dupnik and Nanos personally implemented the deficient and unconstitutional procedures regarding the DUI blood draws that were in place when he was arrested. (Doc. 47 at 19-24.) Plaintiff attaches those procedures as exhibits to his Amended Complaint. (Docs. 47-1 through 47-4.) According to the Defendants, the Plaintiff has not sufficiently alleged personal liability and has also failed to show the existence of an unconstitutional policy, practice or custom.

Even if the Plaintiff were able to prove that Dupnik and Nanos were personally liable under *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (because they were personally involved in the alleged constitutional deprivation, because there was a sufficient causal connection between their alleged wrongful conduct and the violation, or because they implemented a policy so deficient that the policy itself was a repudiation of a constitutional right and was the moving force of the violation), the Court nonetheless finds that Plaintiff failed to show that the challenged DUI policy is unconstitutional.

Plaintiff alleges that the Defendants' Department Manuals allow deputies who are inadequately trained as so called "phlebotomists" to forcibly draw blood. (Doc. 47 at 20:9-22.) He further alleges that the Defendants have a policy of not having deputies carry breathalyzers and not honoring an arrestee's request to submit to a

1 | breath test in lieu of a blood test at a nearby private medical facility instead of at the

2 | jail. (Doc. 47 at 4:11-23.)

The DUI Manual submitted by the Plaintiff in support of his claims states:

> B. Deputies *shall be current in the DUI policies and procedures* of the Department including field sobriety tests, *tests to determine blood alcohol concentration,* and implied consent laws.
>
> C. A blood sample *shall be obtained* to determine the alcohol concentration and/or drug content of suspects arrested for DUI related crimes.
>
>    1. *Arrestees who refuse to voluntarily submit* to a blood test. . . shall be served the appropriate . . . suspension and the *investigating deputy or designee shall pursue a search warrant in order to obtain a blood sample*, unless the arrestee is transported for medical treatment.
>
>    2. *Medically qualified and phlebotomy-trained law enforcement personnel* are authorized to perform venipunctures (blood drawing) for the purpose of obtaining legally-mandated blood evidence as authorized by law.
>
>    . . .
>
>    4. The warrant shall be executed at an *appropriate location*.
>
> E. DUI Search Warrants
>
> . . .
>
>    5. *In the event an arrestee physically resists or threatens to physically resist the execution of the search warrant, the arrestee shall be transported to the Pima County adult Detention Center.* The warrant shall be executed at a designated location at the Pima County Adult Detention Center prior to booking. The blood shall be drawn by a Department Phlebotomist.

(Doc. 47-3 at 1-2) (emphasis added).

In summary, the DUI Manual requires that deputies be current in DUI policies and procedures including tests to determine blood alcohol concentration and that *only* medically qualified and phlebotomy-trained law enforcement personnel conduct venipunctures. The policy goes on to state that a search warrant must be executed at an *appropriate* location and designates the Pima County Adult Detention Center as the appropriate location to draw blood (by a phlebotomist) when an arrestee threatens to resist the execution of a search warrant.[5]

Contrary to Plaintiff's assertion, the DUI manual does *not* allow inadequately trained phlebotomists to forcibly draw blood from someone arrested for DUI. It does the opposite.

Additionally, as written there is nothing about the policy that is unconstitutional on its face. *See Board of the County Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 404 (1997) (official municipal policy is itself unconstitutional when it directs municipal employees to violate Constitution). And the policy complies with Arizona law which provides that "only a physician, a registered nurse or another qualified person may withdraw blood for the purpose of determining the alcohol concentration or drug content in the blood." A.R.S. § 28–1388(A). A

---

[5] To the extent that Plaintiff is alleging that the Pima County Sheriff's Department General Order (Doc. 47-4) is an unconstitutional policy regarding field release arrests, the Court recommends that the claim also be dismissed. *See Higbee v. City of San Diego*, 911 F.2d 377, 380 (9th Cir.1990) (After a lawful arrest, a person has no constitutional right to be released in the field without being booked.)

7

phlebotomist is a "qualified person under § 28–1388(A). *State ex rel. Pennartz v. Olcavage*, 200 Ariz. 582, 588 (App.2001).

Plaintiff has failed to demonstrate the existence of an unconstitutional policy. The Court will recommend that this claim be dismissed. The issue as to whether there was an unwritten policy or practice of performing venipunctures in a manner that was inconsistent with the policies set out in the written DUI Manual will be discussed herein at Section C.

### C. Official Capacity/Monell claim against Pima County (based on the actions of Dupnik, Nanos, Jansen, Dixon and Curtin) (Doc. 47 at 28-33)

In *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978), the Supreme Court held that a municipality is not liable under a theory of respondeat superior for the actions of its subordinates. Instead, a plaintiff seeking to impose liability on a municipality must identify a municipal "policy" that caused the plaintiff's injury. *Id*. As stated herein in section B, Plaintiff's claim against Pima County fails because the DUI policy he complains of is not constitutionally deficient.

In the absence of a formal facially unconstitutional governmental policy, a plaintiff must show a "longstanding practice or custom which constitutes the standard operating procedure of the local government entity." *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992). It must be so "persistent and widespread" that it constitutes a "permanent and well settled city policy." *Monell*, 436 U.S. at 691.

Plaintiff has failed to make this showing as well. He has not provided any facts to suggest that Pima County or the Sherriff had an unwritten policy or practice

of performing venipunctures in a manner that was inconsistent with the policies set out in the written DUI Manual. *See also Davis v. City of Ellensburg*, 869 F.2d 1230, 1233-34 (9th Cir. 1989) (overruled on other grounds by *Beck v. City of Upland*, 527 F.3d 853 (9th Cir. 2008) (A plaintiff cannot prove the existence of a municipal policy or custom based solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee.)). The Court will recommend that the claim against Pima County based on the actions of Dupnik, Nanos, Jansen, Dixon and Curtin be granted.[6]

### D. Individual-Capacity Excessive Force and Unlawful Imprisonment Claims against Jansen, Dixon and Curtin (Doc. 47 at 14-19)

Defendants argue that qualified immunity bars Plaintiff's individual capacity claims against Jansen, Dixon and Curtain.[7] The doctrine of qualified immunity protects officers from civil liability under 42 U.S.C. § 1983 if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable

---

[6] Defendants do not seek dismissal of Plaintiff's ADA claim against Pima County. Doc. 55, fn. 4). To the extent that Plaintiff alleges an ADA claim against any Defendant in their individual capacity, the Court recommends that the claim be dismissed. *See* 42 U.S.C. § 12132 (Title II provides disabled individuals redress for discrimination by a "public entity."). That term, as it is defined in the statute, does *not* include individuals. *See* 42 U.S.C. § 12131(1).

[7] Defendants did not previously seek to dismiss the excessive force claims (Doc. 41 at 3) but do so now arguing that the officers are protected by qualified immunity. Plaintiff argues that Defendants cannot move to dismiss this claim because they failed to make their motion to dismiss the original complaint and should now be barred. Plaintiff is incorrect. An amended pleading is subject to the same challenges as the original. *See Nelson v. Adams USA, Inc.*, 529 U.S. 460, 461 (2000) ("This opportunity to respond, fundamental to due process, is the echo of the opportunity to respond to original pleadings secured by Rule 12.").

person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal citation omitted). In determining whether an officer is entitled to qualified immunity, a court must consider two issues: (1) whether the officer's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the incident. *Id.* at 232.

With respect to Plaintiff's claim of unlawful imprisonment, an arrestee does not have a constitutional right to immediate liberty after they are lawfully arrested. *Higbee v. City of San Diego*, 911 F.2d 377, 379 (9th Cir. 1990). With respect to Plaintiff's claim of excessive force based on the officers' refusal to honor Plaintiff's request for a breathalyzer or an intoximeter or to be taken to a medical facility for an independent blood draw, under § 28–691(A), the choice of test is at the discretion of a law enforcement officer with reasonable grounds to believe that a person was in control of a vehicle while under the influence of alcohol or drugs. *Schade v. Department of Transp.*, 175 Ariz. 460, 464-64 (App. 1993). Plaintiff has not shown that he had a constitutional right to have a breathalyzer or an intoximeter in lieu of a blood test. Nor has he shown that he had a constitutional right to be taken to a medical facility for an independent blood draw.

The Court will therefore recommend that the District Court dismiss Plaintiff's claims of unlawful imprisonment and excessive force based on the officers' failure to do a field release and failure to honor Plaintiff's request for an alternative to a blood draw.

With respect to Plaintiff's excessive force claim against Jansen for the blood draw, Jansen did not attempt to draw blood from Plaintiff; only Dixon and Curtain did. A plaintiff may not lump the defendants together under a team effort theory of liability but must base each defendant's liability on his own conduct. *Chuman v. Wright*, 76 F. 3d 292, 295 (9th Cir. 1996). The Court will therefore recommend that the claim against Dixon be dismissed.

Regarding the excessive force claim against Dixon and Curtain for their five unsuccessful blood draws, the Fourth Amendment guarantee against unreasonable searches and seizures is violated when a defendant's blood is drawn in an unreasonable manner. *See State v. May*, 210 Ariz. 452, ¶¶ 5–6 (App. 2005). "The fundamental question with respect to compelled blood draws and the Fourth Amendment, however, is not whether the blood draw program as a whole is reasonable—a question our state legislature implicitly has answered in A.R.S. §§ 28–1321 and 28–1388—but rather, 'whether the means and procedures employed in taking [a suspect's] blood respected relevant Fourth Amendment standards of reasonableness.'" *State v. Noceo*, 223 Ariz. 222, ¶ 11 (App. 2009) (quoting *Schmerber v. California*, 384 U.S. 757, 768 (1966)).

Here, Plaintiff alleges that Dixon and Curtain performed five progressively increasingly painful and unsuccessful needle punctures before taking him to the hospital for a successful blood draw on the first attempt. Plaintiff further alleges that Dixon and Curtain performed these needle punctures after being told that Plaintiff (an elderly man of over 65 years of age) had a serious heart condition and had trouble

having his blood drawn. These facts sufficiently allege a violation of a constitutional right, the right to be free from unreasonable searches and seizures under the Fourth Amendment. This right was "clearly established" at the time of the alleged misconduct. *See Noceo,* 223 Ariz. 222 at ¶ 11 and *May*, 210 Ariz. 452 at ¶¶ 5–6.[8] *Compare People v. Esayian*, 5 Cal.Rptr.3d 542, 550 (2003) (blood draw by phlebotomist upheld when no showing made that "manner of drawing the blood was unsanitary, or subjected the suspect to any unusual pain or indignity") and *State v. Daggett*, 250 Wis.2d 112, ¶ 18 (Ct.App.2001) (finding reasonable blood draw in booking room of jail, "although not a sterile environment," when record did not suggest "any danger to [suspect's] health").

Qualified immunity does not shield these defendants from suit. The Court will recommend that Defendants' motion to dismiss Plaintiff's claim against Dixon and Curtain for excessive force based on the unsuccessful blood draws be denied.[9]

### III. Leave to Amend

---

[8] In fact, Curtain was the Sherriff Department's phlebotomist who drew May's blood. He testified that, based on his knowledge and training, the standard of care required him to clean the arm and "not caus[e] any injury to the patient." *May*, 210 Ariz. 452 at ¶ 8.

[9] Plaintiff brings this excessive force claim under the Fourth and Fourteenth Amendments. Defendants are correct that because Plaintiff was an arrestee and not a pre-trial detainee when the blood draws occurred, his claim arises under the Fourth Amendment and not the Fourteenth. *Fontana v. Haskin*, 262 F.3d 871, 879 (9th Cir. 2001). The Court will recommend that the Fourteenth Amendment part of the claim be dismissed.

The Federal Rules of Civil Procedure state that leave to amend "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a)(2). The decision of whether to grant leave to amend nevertheless remains within the discretion of the district court, which may deny leave to amend due to "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, (1962); *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Here, Plaintiff has already been given leave to amend. He was not able to cure the deficiencies in his Amended Complaint against Dupnik, Nanos or Napier either in their individual capacity or in their official capacity. He was also not able to allege a cognizable legal theory against Pima County based on *Monell* or against Curtain. Having failed to provide any facts that would support a legal theory against these Defendants, granting leave to amend would be futile. The Court recommends that the District Court not allow the Plaintiff further leave to amend his Amended Complaint.

**IV. Recommendation**

Based on the foregoing, the Magistrate Judge recommends that the District Court, after its independent review, **grant in part and deny in part** Defendants' Motion to Dismiss (Doc. 23) as follows:

- Deny Defendants' Motion to Dismiss:

    Individual-Capacity Fourth Amendment Excessive Force Claim

(based on unsuccessful blood draws) against Dixon and Curtin (Doc. 47 at 14-19).

- Grant Defendants' Motion to Dismiss *without* leave to refile:

    -Official-Capacity/Monell Claim against Napier (Doc. 47 at 25-27);

    -Individual-Capacity Fourth and Fourteenth Amendment Claims (based on policies, practices and orders) against Dupnik and Nanos (and Napier, if alleged) (Doc. 47 at 19-24);

    -Official Capacity/Monell Claim against Pima County (based on the actions of Dupnik, Nanos, Jansen, Dixon and Curtin) (Doc. 47 at 28-33);

    -Individual-Capacity Unlawful Imprisonment Claim (based on no field release) against any Defendant (Doc. 47 at 14-19);

    -Individual-Capacity Excessive Force Claim (based on failure to honor request for alternative to blood draw at the jail) against any Defendant. (Doc. 47 at 14-19);

    -Individual-Capacity Excessive Force Claim (based on blood draws) against Jansen (Doc. 47 at 14-19); and

    -Individual-Capacity Fourteenth Amendment Claim (based on unsuccessful blood draws) against Dixon and Curtin (Doc. 47 at 14-19).

This Recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

However, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the District Court. *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure. Thereafter, the parties have fourteen (14) days

within which to file a response to the objections. No replies shall be filed without leave of the District Court. If any objections are filed, this action should be designated case number: **CV 16-134-TUC-JAS**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to *de novo* consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*).[10]

Dated this 22nd day of August, 2017.

_____
Honorable Jacqueline M. Rateau
United States Magistrate Judge

---

[10] Should the District Court adopt this Report and Recommendation, the following claims would remain: an ADA claim under Title II against Pima County and an excessive force claim under the Fourth Amendment against Dixon and Curtin based on the unsuccessful blood draws.